# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

STEVE BARKET,

      Plaintiff,

v.

TOM CLARKE,

      Defendant.

2:12-CV-393 JCM (GWF)

**ORDER**

Presently before the court is counterdefendant Steve Barket's motion to dismiss. Doc. #10. Counterclaimant Tom Clarke filed an opposition (doc. #11), to which Barket replied (doc. #14).

**Background**

Clarke runs training programs for various types of tactical teams and security personnel as well as providing consulting services for various movie and television producers regarding military and security operations. Countercl. at ¶ 4. Clarke asserts that the various members of his team were formerly associated with elite units of military and non-military organizations. *Id.* While the pleadings provide scant detail as to exactly what Barket's profession is, it appears that he makes his livelihood from internet marketing and internet reputation management. Compl. ¶ 8. Barket claims that due to his profession his name is well known on the internet and highly valuable. *Id.* ¶ 9.

Barket initially filed suit alleging violations of Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) and the Lanham Act, 15 U.S.C. § 1125(a) and 15 U.S.C. § 8131. *Id.* ¶ 1. These allegations are premised on Clarke's alleged registration of the domain names:

**James C. Mahan**
**U.S. District Judge**

1  &lt;stevebarketexpose.com&gt;, &lt;stevebarketvegas.com&gt; and &lt;stevebarketinfo.com&gt;, as well as, the
2  email address &lt;stevebarket@aol.com&gt;. *Id.*

3      Clarke has counterclaimed, alleging negligence, negligent infliction of emotional distress,
4  interference with contractual obligations, intentional interference with prospective economic
5  advantage, defamation, and false light. Clarke's claims are premised on allegations that Barket
6  divulged sensitive information about Clarke, his staff of advisors, and his clientele on the internet
7  beginning in, or around, 2011. Countercl. ¶ 5. Clarke claims that due to the many "sensitive areas"
8  that Clarke and his staff have worked over the years, divulging this information has caused grave
9  safety concerns for him and his staff. *Id.* at ¶ 6. Clarke further asserts that Barket posted information
10 about Clarke's fiancée, resulting in her being forced to relocate. *Id.* at ¶ 5.

**Discussion**

1. Standard of Review

    A plaintiff must include a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The statement of the claim is intended to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Pursuant to Federal Rule of Civil Procedure 12(b)(6), courts may dismiss causes of action that "fail[] to state a claim upon which relief can be granted."

    Courts must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). Although "not akin to a 'probability requirement,'" the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 2 -

1  2.     Analysis

2       I. Negligence

3  Clarke claims that Barket acted negligently by breaching his duty to act reasonably and exercise ordinary care under the circumstances. In order to succeed on a negligence claim Clarke must allege: (1) defendant owed a duty to plaintiff; (2) defendant breached the duty; (3) the breach was the legal cause of plaintiff's injuries; and (4) plaintiff suffered damages. *See Scialabba v. Brandise Constr. Co., Inc.*, 112 Nev. 965, 968 (1996). The nature and extent of a Barket's duty is decided by the court, but the determination of whether Barket used reasonable care under the circumstances is a question for the jury. *See Lee v. GNLV Corp.*, 117 Nev. 291, 296 (2001). General negligence standards dictate a duty to use reasonable care to avoid foreseeable harm. *See Butler v. Bayer*, 123 Nev. 450, 454–55 (2007) (finding that a general standard of negligence is to exercise reasonable care under the circumstances).

This court finds that Clarke made sufficient factual allegations to support a negligence claim. Clarke asserts that Barket breached a duty of care when he placed personal information about Clarke, his staff and his clientele on the internet. Countercl. ¶ 4–11. Barket allegedly acted unreasonably when he divulged personal information on the internet, especially in light of the sensitive nature of Clarke's job. *Id.* Clarke claims that his grave concern for safety and his fiancée's relocation were directly caused by Barket's actions. *Id.* Furthermore, Clarke contends that as a result of Barket's actions, his staff and their families had concerns for safety. *Id.* Clarke maintains that he suffered damages as a result of Barket's behavior. *Id.*

The allegations put forth by Clarke are sufficient to plead a claim for negligence. Accordingly, Barket's motion to dismiss the "negligence" claim is denied.

      ii. Negligent Infliction of Emotional Distress

This court finds that Clarke made an insufficient showing for a negligent infliction of emotional distress claim. Clarke's claim for negligent infliction of emotional distress fails, because Clarke alleges that he was the direct victim of Barket's allegedly negligent actions. In *Shoen v. Amerco*, 111 Nev. 735, the Nevada Supreme Court explained that negligent infliction of emotional

1  distress claims include "a bystander's emotional injury caused by witnessing physical injury to a
2  third-person caused by defendant's negligence." *Id.* at 748.  However, a "direct victim," as opposed
3  to a bystander, can "assert a negligence claim that includes emotional distress as part of the damage
4  suffered as well as an intentional tort cause of action." *Id.*

5        Accordingly, a direct victim, such as Clarke, may bring an intentional infliction of emotional
6  distress claim, but may not assert a negligent infliction of emotional distress claim.  Where the
7  evidence "presents a close case of whether an intentional or a negligent act was committed" the
8  direct victim may also seek recovery for emotional distress through a simple negligence claim. *See*
9  *Id.*; *see also Kennedy v. Carriage Cemetery Services, Inc.*, 727 F. Supp. 2d 925, 934-35 (D. Nev.
10  2010) ("[a]lthough *Shoen* made emotional harm available as a measure of damages for a simple
11  negligence claim, the case did not expand the NIED cause of action itself to include an alternative
12  to IIED where the defendant's extreme and outrageous conduct was merely negligent.").

13        Since Clarke has pled negligent infliction of emotional distress as a separate claim, Barket's
14  motion to dismiss the "negligent infliction of emotional distress" claim is granted.

15        iii. Interference with Contractual Relations

16        Clarke claims that Barket interfered with Clarke's contractual relations.  In order to establish
17  interference with contractual relations, Clarke must allege:  (1) a valid and existing contract; (2)
18  defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the
19  contractual relationship; (4) actual disruption of the contract; and (5) resulting damage.  *Hilton*
20  *Hotels Corp. v. Butch Lewis Prods.*, 109 Nev. 1043, 1048 (1993).

21        This court finds that Clarke sufficiently pled an interference with contractual relations claim.
22  Clarke asserts that he was engaged in valid and existing contracts with third parties, of which Barket
23  had knowledge.  Countercl. ¶ 16–19.  Barket allegedly used his knowledge of Clarke's existing
24  contracts and made false, disparaging, and defamatory statements in the presence of and to third
25  parties and competitors.  *Id.*  Clarke further maintains that Barket posted false, disparaging, and
26  defamatory statements on the internet.  *Id.*

27  . . .

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

Accordingly, Barket acted intentionally to disrupt Clarke's contracts by making false, disparaging and defamatory statements about Clarke to third parties and competitors. *Id.* Clarke contends that his contracts were disrupted as a result of the allegedly intentional conduct by Barket which, Clarke claims, interfered with his ability to conduct normal business. *Id.* Clarke asserts that the culmination of Barket's actions resulted in damages. *Id.*

The allegations put forth by Clarke are sufficient to plead a claim for interference with contractual relations. Accordingly, Barket's motion to dismiss the "interference with contractual relations" claim is denied.

    iv. Intentional Interference with Prospective Economic Advantage

Clarke claims that Barket's conduct ruined Clarke's reputation in the business and marketing community which caused the loss of prospective economic opportunity with respect to existing and prospective clients.

In order to establish intentional interference with prospective economic advantage, Clarke must allege: (1) a prospective contractual relationship between Clarke and a third party; (2) knowledge by defendant of the prospective relationship; (3) intent to harm plaintiff by preventing the relationship; (4) the absence of privilege or justification by defendant; and (5) actual harm to plaintiff as a result of defendant's conduct. *See Wichinsky v. Mosa*, 109 Nev. 84, 88 (1993).

This court finds that Clarke sufficiently pled an intentional interference with prospective economic advantage claim. Clarke alleges that he had prospective contractual relationships with existing and prospective clients. Countercl. ¶ 21–23. Clarke claims that Barket knew of Clarke's relationships. *Id.* Barket allegedly divulged personal and work related information about Clarke to third parties, competitors and posted this information on the internet. *Id.* Clarke asserts that Barket was aware of contractual relationships that Clarke had because he engaged in disclosing disparaging, false, and defamatory information to third parties and competitors. *Id.*

Further, Clarke maintains that Barket, without right or justification, engaged in spreading false information to competitors and to third parties to intentionally harm any existing and future relationships of Clarke. *Id.* Clarke claims that Barket knew his conduct would substantially interfere

1    with, disrupt and injure Clarke by causing loss of prospective economic opportunity with respect to
2    existing and prospective clients. *Id.* Clarke contends that Barket substantially interfered with
3    Clarke's business and ruined his reputation. *Id.* Clarke asserts that as a result of Barket's alleged
4    behavior Clarke sustained damages. *Id.*

5    The allegations put forth by Clarke are sufficient to plead a claim for intentional interference
6    with prospective economic advantage. Accordingly, Barket's motion to dismiss the "intentional
7    interference with economic advantage" claim is denied.

8    v. Defamation

9    Clarke claims that Barket posted defamatory remarks on the internet. In order to prove a
10   prima facie case for defamation Clarke must allege: (1) a false and defamatory statement made by
11   defendant concerning plaintiff; (2) an unprivileged publication to a third party; (3) fault, amounting
12   to at least negligence; and (4) actual or presumed damages. *See Chowdhry v. NLVH, Inc.*, 109 Nev.
13   478, 483 (1993). If the defamation tends to injure Clarke in his business or profession then it is
14   considered per se, and damages will be presumed. *Id.* at 483–84.

15   This court finds that Clarke sufficiently pled a defamation claim. Clarke claims that Barket
16   made false, defamatory, disparaging, baseless, unsupported remarks and innuendos about Clarke
17   including the following: (1) Barket asserts that Clarke claims he was in the military; (2) Barket
18   allegedly made false statements about Clarke regarding his taxes and the IRS; and (3) Barket claims
19   that Clarke filed for bankruptcy. Countercl. ¶ 24–28. Barket allegedly stated these claims in the
20   presence of and to third parties. *Id.* Clarke asserts that Barket also posted these false comments on
21   the internet without permission. *Id.* Barket's alleged conduct would constitute and unprivileged
22   publication to a third party because the statements were posted on the internet and were stated to and
23   in the presence of third parties and competitors. *Id.*

24   Clarke contends that Barket's conduct adversely effected Clarke's business. *Id.* Clarke
25   asserts that Barket posted this information intentionally and maliciously on the internet in order to
26   adversely effect Clarke's business, reputation and goodwill. *Id.* Clarke maintains that he depends
27   on his well established business reputation in order to successfully conduct business and Barket's
28

**James C. Mahan
U.S. District Judge**

- 6 -

1  false statements and publications effected Clarke's business. *Id.* Clarke alleges that Barket's actions
2  damaged him. *Id.*

3        The allegations put forth by Clarke are sufficient to plead a claim for defamation. Therefore,
4  Barket's motion to dismiss the "defamation" claim is denied.

5        vi. False Light

6        Clarke claims that Barket, without right or justification, published defamatory and
7  disparaging statements to third parties that placed Clarke in a false light. To plead false light
8  invasion of privacy, Clarke must allege: (1) defendant gave publicity to a matter concerning plaintiff
9  that placed him before the public in a false light; (2) that the false light would be highly offensive
10 to a reasonable person; and (3) defendant had knowledge of, or acted in recklessly disregard as to,
11 the falsity of the publicized matter and the false light in which plaintiff would be placed. *Vail v.*
12 *Pioneer Mut. Life Ins. Co.*, No. 2:10-cv-233-JCM (LRL), 2010 U.S. Dist. LEXIS 107994, at *5–6
13 (D. Nev. Oct. 6, 2010). False light also requires an implicit false statement of objective fact. *Id.*

14       "The false light action differs from a defamation action in that the injury in privacy actions
15 is mental distress from having been exposed to public view, while the injury in defamation actions
16 is damage to reputation." *People for the Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 111
17 Nev. 615, 622 n.4 (1995), *overruled in part on other grounds by City of Las Vegas Downtown*
18 *Redevelopment Agency v. Hecht*, 113 Nev. 644, 650 (1997). A false light claim may be defamatory
19 but there is no requirement for it to be defamatory. *Id.*

20       The court addressed the facts as to this claim in its discussion of defamation. The facts
21 alleged against Barket also meet the prima facie elements for false light. *See Vail*, 2101 U.S. Dist.
22 LEXIS 107994, at *5–6. As explained above, Barket has allegedly published false statements about
23 Clarke. Counterel. ¶ 24–34. Clarke asserts that the false light in which he was placed could be
24 considered highly offensive to a reasonable person. Moreover, Clarke claims that Barket was
25 reckless when he published the false statements concerning Clarke. Clarke maintains that his
26 reputation was damaged as a result of Barket's behavior. *Id.*

27 . . .

28

**James C. Mahan**
**U.S. District Judge**

- 7 -

1  The allegations put forth by Clarke are sufficient to plead a claim for false light. Therefore, Barket's motion to dismiss the "false light" claim is denied.

**Conclusion**

For the reasons state above,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, that counterdefendant's motion to dismiss (docs. #10) be, and the same hereby is, GRANTED in part, and DENIED in part.

DATED June 26, 2012.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 8 -